The first matter is Robertson v. Klem. Mr. Ness? Chief Judge Sirica, and may it please the Court, my name is John Ness. I'm with the law firm of Winston & Strawn, and I represent Petitioner-Appellant David Robertson. Are you doing this pro bono? Yes, Judge. Thank you. We thank you for that. It's our honor. Thank you, Judge. With the Court's permission, I would like to reserve four minutes of rebuttal time. Surely. Your Honors, the Commonwealth Courts in this case violated Mr. Robertson's due process rights by finding that he entered into two separate illegal agreements when there was absolutely no proof of a second agreement. As this Court is well aware, any conviction, state or federal, must be supported by proof beyond a reasonable doubt for every element of each charged crime. Pennsylvania's law of conspiracy clearly requires, and the Commonwealth does not dispute this, that there be proof of separate agreements before a person can be guilty of multiple conspiracies. But here, the evidence of separate agreements was not merely insufficient. It was completely and totally lacking. There simply wasn't any evidence at all of two separate agreements, and no rational juror could have found otherwise. Despite this, the State Courts unreasonably sustained two convictions in any event, and have left Mr. Robertson to face double punishment for his actions in this case. This result violates federal law, and the decision below should be reversed. There's two cases that seem to be applicable to Pennsylvania cases, maybe more than that. Commonwealth v. Koehler and Commonwealth v. Andrews. You think they're distinguishable? Certainly, with Koehler, Your Honor, I believe that it's distinguishable, because in that case, as the Commonwealth showed, there were two murders in that case. The first murder was the murder of the mother that was part of a conspiracy, where the defendant's accomplice and co-conspirator agreed to murder the mother. They shot the mother in the garage, actually the co-conspirator did, and left the child at the house where the murders occurred. They took the mother's body to a dump, I believe it was, and disposed of the body in a drainage ditch. I'm sorry, it was in a refrigerator. Then they came back, the case is not clear how long it was, but there was certainly a substantial period of time where they came back to the house, and on the drive back to the house, the co-conspirator, the defendant, said, you've got to kill the kid as well. And at that point, the defendant agreed to kill the child. And so they went back to the house, and then they disposed of the defendant, or rather the co-conspirator, Mr. Carney, I believe his name was, disposed of the child's body later. So there was a gap in time. There was evidence, and that's the key issue, why that case does not apply here. There was evidence of a second later agreement to engage in the second conspiracy. What about Andrews? Again, in Andrews, the facts there also show that there was additional proof of a second agreement. Here, we don't have proof of a second agreement. All we have is proof that Mr. Robertson made some statements that he was involved in doing something that he didn't want to do, that he went to the house and bad things happened, and that two people were shot at the same time in the same location with the same weapon, with the same actors at the same time on the same day. Assuming we agree with you on this, what's the remedy? The remedy, we believe, would be to remand the case to the district court with instructions that the petition be granted, and that the case be then remanded to the state courts for a determination of which conspiracy charge the Commonwealth would like to see go away, and then a resentencing. Does it matter? Weren't both conspiracy charges the same, and the sentence on each the same? The sentences on each were the same, Your Honor, but the problem here is that they were imposed to be served consecutively. Oh, no, I understand that. All I'm asking you, do you care which of the two? I mean, they're two identical, aren't they? They are. They are. So we really, we don't think it makes a difference. To the extent that the Commonwealth wants to weigh in on that, we think that that would be properly addressed in the state courts in the first instance. Mr. Kass, let me ask you a question. I apologize for my voice. I'm having trouble articulating much, getting much volume this week, but is there ever, could a second agreement be inferred from two killings where there were sufficient facts that showed that the circumstances of those two killings in a situation like this, in a relatively close quarter, this was no mansion, this was a trailer, without the mentions, but assuming the largest size trailer there is, very big, could you infer that agreement merely from the facts, without any direct evidence about that second agreement? In some cases, yes. If there was sufficient circumstantial evidence of a second agreement as viewed under the Barnes factors or the Pennsylvania multi-factor test, assuming there was evidence that there was some span of time or some other thing, yes, you could infer a second agreement if there were additional facts, but that's not this case, obviously, and I know Your Honor is looking for a line to draw here, but the problem is that there just weren't any facts here from which a second conspiracy could have been inferred. There were none. Is there anything in the record that hasn't come to us which would show why they decided to kill the Povlicks? I can't find any reason for that. Well, we couldn't find much of a reason either, Your Honor, but I would point out that it's been the Commonwealth's consistent position in this case, and I will quote from, this is record eight, their opposition in the district court to the petition for habeas corpus. They said, and this is from page one to two, the killings, quoting now, the killings, witnesses called and circumstances all revolved around the sale and theft of potent drugs coupled with anger and drug-laced motives. That's the best that we can tell as to why this crime happened, and as far as the record shows, apparently, and I do not believe that the Commonwealth disputes this, and they can correct me if I'm wrong, but the record shows that both victims were involved in dealing with illicit drugs from their home. Okay. Thank you. You seem to acknowledge, well, you do acknowledge in your brief that ADEPA is our standard to review the reasonableness of the state court's application of federal law. Is it ADEPA? Yes. Is it Jackson? Well, this gets into the complicated mixture of the various standards of review that this applies here because of the time when it was filed. ADEPA applies, but the constitutional right that we're talking about here is Winship and Jackson v. Virginia. So that's a constitutional right that was violated, and what we're saying is that when the Commonwealth courts determined that there was proof beyond a reasonable doubt for every element of both charged crimes, that that was an unreasonable determination. This is a question of federal law, not state law. That's the one thing we want to make very clear here. So the right that was violated was Jackson v. Virginia, Winship. There was not proof of a second agreement. And the error that allows this, that gives this court the power to correct that error committed by the Commonwealth courts was that they unreasonably determined that there was proof beyond a reasonable doubt for both crimes. So that's the federal dimension here, and our position consistently has been that Winship has to mean something. And if it means anything, it means that you have to have proof beyond a reasonable doubt for every element of each charged crime. And I would point out to the court further that Section 903, which is the Commonwealth's conspiracy statute, has a subsection, C, that says that when a person conspires to commit a number of crimes, quoting, he is guilty of only one conspiracy so long as such crimes are the subject of a conspiratorial relationship. I was going to ask you about 903 when you answered Judge Fischer. What's the relevance of that in light of your answer to Judge Fischer about the constitutional dimension? That's an element of the state law, Your Honor. I know that. And how does that come into our analysis? Well, Jackson v. Virginia explained that in any habeas inquiry, and this was at footnote 16 in the case, any habeas inquiry into the sufficiency of the evidence in a state court trial has to be viewed, has to be conducted with reference to state law. So state law supplies the elements. Federal law supplies the standard of reasonableness now, and under the federal dimension, the state dimension is what is the crime. And this Court has been consistent, as have I believe most of the, if not all of the circuits, that when we conduct the sufficiency of the evidence inquiry, we have to look at not only the elements of the actual statute, but how the state courts have interpreted the statute. And it defines the conspiracy by virtue of Section 903. Correct. What about 906? The person may not be convicted of more than one of the inchoate crimes of criminal conspiracy, and the Commonwealth cites the Commonwealth v. Graves, which they say is a similar case here, involving an assault on three police officers. I see that my time is up. Oh, that's all right. Thank you. We have explained in our briefs that we don't think that Section 906 really applies here. That's a statute that says when you have the same kind of criminal intent, such that you would have a conspiracy or a solicitation or an attempt, someone can't be convicted of conspiracy, solicitation, attempt, and then the substantive crime. There has to be some merger of that. It's not really relevant to the decision or determination whether there's proof of two separate agreements. That's the question under 903. And that's what this Court's COA was directed toward, was whether there was evidence sufficient to show two conspiracies. If we don't have evidence of two conspiracies, we can't have two crimes. We can't have two convictions. That's why 906 does not apply. Any other questions? No. Mr. Ness, thank you very much. Thank you. Mr. Hennix. Good morning. May it please the Court, Chief Judge Sirica, members of this Honorable Court. My name is Jack Hennix, and I am the First Assistant District Attorney of Fayette County, and I am here on behalf of the Commonwealth of Pennsylvania in regard to this matter. First of all, it is entirely clear from the judge's charge through the trial in this case and through all the Commonwealth appellate courts as well as the magistrate court as well, that in fact there were two distinct crimes, two distinct conspiracies that were charged from the outset in this case. What's the evidence of two distinct conspiracies? Well, Your Honor, the jury had that before them. Yeah, tell us what it is. Well, they had two murder counts and they had two conspiracy counts. Well, that just says what the Commonwealth charged. What was the evidence that came in before the jury? The evidence that came in before the jury was that Mr. Robertson had produced a gun. It was the Commonwealth's theory of the case that he was present at least during the commission of the offense and that another individual who, frankly, was subsequently acquitted of this at a trial a couple months later, but he was the actual person that pulled the trigger. Yeah, but in terms of the conspiracy, it was my understanding, and I'd like you to clarify, that the court took the position that the number of victims would determine the number of conspiracies. Is that incorrect? Well, I think that in our case, we started with the premise that there are two persons that are dead. The murder charges were charged, and we do not know, at least at the outset of the case, what evidence is going to be ultimately produced at trial. I don't think anybody's claiming that the Commonwealth shouldn't have so charged initially. The question is, once the evidence came in and the court gave the jury charge, and it was then the position of the habeas court director, that two victims means two conspiracies. Is there anything more than that presupposition as to what the law is? Well, I think under the circumstances, it is that a conspiracy by itself is going to be very difficult to prove, especially in a case where, obviously, there are no witnesses except for the two defendants and the two dead victims. Excuse me for interrupting you. I didn't understand the appellant, the petitioner, to be arguing that there wasn't enough evidence of a conspiracy. I think the conspiracy element is conceded. The question is, how many conspiracies? And I understand that, Your Honor. I think the problem, though, goes to even your question, I believe, in regard to what do we do with this case. How do we now decide that the conspiracy that was decided upon to kill the male victim is different than the conspiracy to kill the female victim, and how do they then become merged for remand purposes in regard to that when the jury distinctly found that there were two different conspiracies and two different victims in this case? And the object of those two conspiracies was the husband and the wife. And it's certainly from the cases, although the cases indicate that in a single victim kind of situation, third-degree murder-robbery, some of the other cases, there isn't really multiple victims in those kind of cases. And in fact, the Graves case, which I believe we cite, does indicate that when there are numerous victims, that numerous conspiracies can be charged and proved in this case. And I believe that that indicates that we do not, and in a conspiracy situation, it's going to be very difficult to say exactly when these two conspirators decided upon killing A and then killing B. In this case, we don't know if B was going to be present at the scene. So, you know, did the conspiracy form at that point or at some point before that? Obviously, those are things the Commonwealth, frankly, probably could never prove, but I think by inference, we can show that. With all due respect, I haven't heard an answer as to what evidence showed two conspiracies. I mean, I gather that you say it's hard to prove a conspiracy. We don't know what happened. But in reviewing it, don't we have to see that there's some evidence of two conspiracies? I think we can infer that the jury found that there were, in fact, two victims, that there were two separate agreements. One, to kill Mr. Pavlik. One, if Mrs. Pavlik were present, to kill her. And that those were two separate agreements that can be inferred, and I would argue that the jury did infer, and in fact, you cannot disagree that the jury had some degree of either logic or intuition or discrimination to decide to acquit on the murder charge and to convict on the conspiracy charge. What about the Pennsylvania Superior Court case of Barnes? In Barnes, again, I believe that Barnes speaks to the issue of the third-degree murder and the robbery situation in which they were, in fact, a common purpose to commit the robbery, and in the course of that, committing the murder. And those were two separate crimes, and the Superior Court reversed the conviction on both. And I understand that, but the problem, I think, in that case is that you have the same victim. I mean, I think we then discount the lives of each victim if we then decide that a conspiracy is only good for one person and not for multiple persons, is that if the defendant gets, in effect, a free shot at both victims and is only convicted of one conspiracy, I think as a matter of public policy, that that should not be a result that should be achieved. And the jury certainly had the opportunity. They were submitted the opportunity to decide on the conspiracy against Mr. Pawlik and against Mrs. Pawlik. What about Section 903C? And I understand that section, and again, I think our argument in the brief, as well as all of the other Commonwealth Court arguments and the magistrate below argument, is that, in fact, they were always charged as two separate conspiracies, and that, in fact, we're not saying that there is a single conspiracy with a common result. We're saying that at the time they were charged, and all the way through trial, is that they were charged as two separate conspiracies. Let me ask you the same question I asked Mr. Ness. If we think that a writ should be granted, what is the remedy? What would we do in this matter? Well, I think, as I alluded to before, I think you have a problem with the fact that there are two separate conspiracies that have been... I agree with you. That's why I'm asking the question. I don't know how you decide to send it back. I think it does. And I think that goes to our argument, frankly. Now, you're going to discount, if you send one back, that's going to discount the conviction on either Mrs. Pawlik or Mrs. Pawlik's conspiracy charge. And I think that that shows the error of that logic, is how do you then decide? And do you send it back for a new trial just simply because the jury did, in fact, convict? And I think that that would be a completely wrong result to give him a new trial on the basis that a jury convicted of one conspiracy. Okay, so assuming that we were to send it back, what would you want sent back? You would not want a new trial first. No, that would be correct. And help us with the rest of it. Obviously, I would be opposed to sending it back at all. I understand that. But if it were to send it back, I would think that the result would be that, in fact, the judge could resentence on the one conspiracy. And I think under Pennsylvania law, looking at the guidelines, and of course, this is probably a little beyond, but the guidelines for this was about 72 months in jail up to the statutory limit, which we believe was 10 to 20, although it's not quite clear from the statutes about that. I think Judge Franks, President Judge Franks at the time, frankly, gave Mr. Robertson a break by sentencing him to 5 to 10 and 5 to 10, when he could have simply sentenced him to 10 to 20. And we'd be not even having this discussion, I would assume, if that were the case, if he ran those things concurrent with each other. So I think if he goes back to a resentencing, I'm afraid that Mr. Robertson is still looking at a significant amount of time in this case, which, again, I think shows you that as a practical matter, what the judge did, regardless of whether there was multiple or single convictions, he, in effect, sentenced him for the conspiracy and didn't give him the maximum that I believe he could have probably given him. Is the judge entirely free to impose an entirely different sentence, even a higher sentence? He would be. So if that sentence were vacated, it's possible that the defendant could end up in worse condition than he is now? It's entirely possible. And again, as a practical matter, I believe he's been in jail since 2000 or 2001. His 10 to 20 is about up at this point. At least he will be eligible for parole probably in the next year or so. I don't understand your answer, your answer before and your answer now. If the judge sentenced him on both conspiracies, each to run 5 to 10, you're saying that if we send it back, the judge could now sentence him to 10 to 20? And the Constitution would permit that? I was trying to research that. There are kind of conflicting statutes. It looks like it's a felony one in Pennsylvania law at the time, which would have been a 10 to 20 year sentence. If that's the case, then he could resentence him up to the statutory maximum if he chose. Frankly, President Judge Franks has passed away. It would be another judge. What would preclude us from, if we were so inclined? We don't discuss these cases beforehand, so I have no idea what anybody thinks, or myself after we confer. But if we were to think that the evidence showed only one conspiracy, would we be precluded from sending it back and saying, drop one and drop the sentence on one, period? I think that would be totally unfair to the Commonwealth. Why? What does fairness have to do with it? Because if there was only one conspiracy proven and submitted to the jury, and he was found guilty of that, it's entirely likely that the President Judge at the time would have given him the 10 to 20. So I think we would be prejudiced by that fact, that in fact the judge, if he had only one, then we'd be looking at what the statutory maximum would be, and he may very well, you know, we're dealing with a case where he was acquitted of two murders, and I can't predict obviously what the President Judge's thinking would be in that case, but I would think that under the circumstances, he may very well have sentenced him to a more significant sentence than the 5 to 10, and if you just vacate one, that really is kind of tying the hand of the fact because of that, because it did not have the opportunity then to say, okay, this is a conspiracy, but they killed, he killed, that conspiracy resulted in the death of two people. Did you argue? I think that makes it more significant. Did you argue with sentencing that the sentence should have been 10 to 20? Your Honor, I was not the trial attorney. Does the record of the sentencing show, either the written record as to what was presented or the oral transcript? I assume it's an oral transcript. I would have to take a look at that. I was not present, and I'm not sure if that was argued. We typically, in our county at least, we sometimes argue for specific sentences, but by the time it goes to the judge, for the most part, the defendant presents a case if he wishes, and we rely most of the time on the judge's discretion in this case. I'm not sure that that was the case, but I would think that it would be because, again, if it was one conspiracy, but the judge would be faced with two deaths. I would think that that would be taken out of, I think that's why he sentenced him the way he did. One conspiracy, one death. One conspiracy, other death. Make it consecutive. If there was one conspiracy for two deaths, it's certainly logical that he could have done that. Is there a record kept in the court that would be available as to what the commonwealth argued with respect to the sentence? Yes, I believe it's in the transcript. It would definitely be in the sentencing transcript. If you would give us leave, we certainly would submit that. If we got to that point. Yes. Thank you. Good. Anything else? Thank you. Thank you very much. Thank you. Good. If I may, Your Honors, I think that there is a, I believe there is a simple answer to the sentencing issue, which is, and I'll represent to the court now and correct it by letter brief with the court's permission if I'm incorrect on this, but I believe that the statutory maximum is 10 years for a conspiracy conviction. But that's for one. But the argument is that the court could have sent, as I understand the commonwealth's argument, the court could have sent, you mean there's no 10 to 20 in other words? Not for one conviction. That's our argument. For one conviction, the statutory maximum, no matter how many victims, no matter how heinous the crime, is 10 years. And that's, I took a look at this last week and we did not put any of this in our brief and perhaps we should have, but the, my understanding of the commonwealth's law on this is that there is a statutory maximum of 10 years for a crime of conspiracy to commit murder. It's in the statute somewhere. I know I've seen it. Why was the co-defendant acquitted? Do you have any idea? I would be speculating here, Your Honor, but I believe that there were a lot of issues of proof here. A lot of the witnesses were, as the commonwealth called them, hardcore drug users. And in fact, in their, again in their opposition to the petition in the district court, which included a component that's not at issue here of effective, ineffective assistance of counsel, they made the point that, and I'm quoting from page three of record eight, as the case was presented, the commonwealth was unable. You mean appendix eight? I'm sorry, record eight. It's not in the appendix. This was record. Oh, okay. As the case was presented, the commonwealth was unable to show much of a connection between Powell and Robertson. Now, Powell was the alleged trigger man. He was acquitted of everything. His trial came later. There was not a lot of evidence. But I do want to be clear about one thing. As Your Honor was getting at, we don't contest that there was sufficient evidence of one conspiracy. That's not what's at issue here. What's at issue here is whether there were two conspiracies. And counsel for the commonwealth referred to an error of logic here in terms of the just punishment issue. The only error of logic here was in charging two conspiracies. So if we have a problem in terms of deciding which conspiracy charge should be dropped, that's because the commonwealth decided to charge a case with two conspiracies and never should have been charged as two conspiracies. And any other inference that counsel would like to draw from the evidence presented at trial, that there could have been some later agreement or they could have made some agreement after Mr. Pavlik was shot to kill Mrs. Pavlik, well, they'd have to have some proof for that to be a rational, logical lead. But he said the jury could infer that there were two conspiracies. An interesting question as to whether that meets Winship. Well, the question is whether under Jackson, interpreting Winship, is whether any rational juror could have inferred that. And our point here consistently has been that no rational juror on this evidence could have inferred a second agreement. If, well, the way the commonwealth has put it was, you're going to kill one and if necessary, if necessary, then we may have to kill the other. That would be proof of one agreement, Your Honor. The agreement would be, we're going to conspire to kill, the agreement in that case would be we're going to conspire to kill the husband and if the wife is there, we're going to have to kill her as well. That's part of one agreement and it is certainly part of one continuous conspiratorial relationship. And that's why the commonwealth courts have devised this multi-factor test because of the problems with conspiracy. Conspiracy is a potent weapon for the government. And they want to argue that we can infer a conspiracy from circumstantial evidence. That's fine. We don't contest that there's one conspiracy here. But they can't take it to the next level and infer it when there was absolutely no evidence of a second conspiracy. And with that, Your Honors, we submit the case and we thank you for your time. Good. Thank you. We thank both counsel for excellent argument and Judge Fischer and I join in Judge Slobiter's commendation. Thank you for taking this case. Thank you, Your Honor. Take the matter under advisement. Thank you.